# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JIMMY PRINCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-2617 |
| | § | |
| MND HOSPITALITY, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

The plaintiff, Jimmy Prince, sued MND Hospitality, Inc. and M.S. Hospitality, L.P. d/b/a The Woodlands Resort & Conference Center, alleging that the defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., by failing to pay overtime for hours worked in excess of forty hours in a workweek.[1]  Prince was a maintenance worker at The Woodlands Resort & Conference Center.  He alleges that his duties required him to perform work before he "clocked in" for the day and while he was "clocked out" for his lunch break.  Prince has "calculated the amount due . . . for unpaid overtime . . . [as] approximately $6,983.66" from June 2005 to July 2008.  (Docket Entry No. 15, Ex. B, Affidavit of Jimmy Prince at ¶ 22).

MND Hospitality and M.S. Hospitality have moved for summary judgment.  (Docket Entry No. 14).  The defendants assert that the undisputed facts show that M.S. Hospitality

---

[1] Prince also sued The Woodlands Operating Company, L.P. d/b/a The Woodlands Development Company and Timothy Budd, individually.  Prince voluntarily dismissed his claims against these defendants on November 12, 2008.  (Docket Entry No. 8).

was not Prince's employer and therefore not liable under the FLSA.  Both defendants assert that they have no FLSA liability because Prince failed to notify them that he was working off the clock and because the amount of unpaid overtime that might be due is *de minimis* and would be offset by holiday pay Prince received.  (*Id.*).  Prince responded, arguing that the record raises fact issues as to the defendants' knowledge that he was working off the clock, the amount of time spent in such work, and whether that time is offset by his holiday pay. (Docket Entry No. 15).  The defendants replied, (Docket Entry No. 16), and moved to strike portions of the affidavit Prince filed in response to the summary judgment motion, (Docket Entry No. 17).

Based on a careful review of the pleadings; the motions, response, and reply; the evidence in the record; and the applicable law, this court grants the motion for summary judgment in part and denies it in part.  This court finds that the undisputed facts show that as a matter of law, M.S. Hospitality was not Prince's employer, but that there are disputed fact issues material to determining whether MND Hospitality violated the FLSA.  The motion to strike Prince's affidavit is denied.

The reasons for these rulings are explained below.

## I.   Background

Prince was a maintenance worker at The Woodlands Resort & Conference Center from June 2005 to July 2008.  As a maintenance worker, Prince was responsible for performing assigned preventive-maintenance tasks throughout the facility.  He was also responsible for responding to maintenance calls that he received through his two-way radio.

When a maintenance call was made for a hotel guest's room, Prince was required to respond within fifteen minutes.  Prince worked a 3:00 p.m. to 11:30 p.m. shift five days a week, Thursday through Monday, with Tuesdays and Wednesdays off.  Prince's immediate supervisor, Jose Canales, worked the same shift.

Prince was paid on an hourly basis.  Under MND's policy, Prince was to receive two paid fifteen-minute breaks and one thirty-minute off-the-clock meal period each day.  Prince was to record all his work time by swiping a timecard to clock in and out.  MND's timecard system did not allow an employee to clock in more than seven minutes before his scheduled shift starts.

Prince's scheduled shift generally began with a department meeting to discuss the day's tasks.  (Docket Entry No. 14, Ex. A, Deposition of Jimmy Prince at 29:17–20).  When the meeting ended, he received a list of urgent guest-room repairs.  (Docket Entry No. 15, Ex. B, Affidavit of Jimmy Prince at ¶ 5).  Prince used a golf cart to travel around the hotel to get to the repair jobs and to carry tools and supplies.  He testified in his deposition that he generally arrived at work thirty minutes before his scheduled shift to gather the necessary materials and stock them in his golf cart.  (Docket Entry No. 14, Ex. A, Deposition of Jimmy Prince at 96:18–97:1).  Many of these materials, including light bulbs, toilet parts, mortar, and ceramic materials, were kept in the supply room and had to be placed on the cart every day.  (*Id.* at 34:13–18; 35:20).  Prince also performed any necessary maintenance on his golf cart during these preshift periods.  (*Id.* at 32:16–24).  Prince restocked the golf cart and serviced the cart inside a gated maintenance area.  The supervisors' offices and the supply

3

room were located in a building inside that same area.

Prince testified that he knew the time clock would not allow him to clock in for his 3:00 p.m. shift until 2:53 p.m.  He had to begin working earlier than that "to get everything that [he] needed done in a timely manner and to get to where [he] needed to get [his] cart, get [his] cart stocked, and have [his] cart functioning properly."  (*Id.* at 96:19–22).  In his affidavit, Prince stated that he stocked and maintained his golf cart before he clocked in for his shift because "all of the calls on the list [he] was given were considered urgent." He did not have time to prepare his cart and supplies after the meeting ended and before he had to begin answering the calls.  (Docket Entry No. 15, Ex. B, Affidavit of Jimmy Prince at ¶ 9). Prince testified in his deposition that no one at the hotel told him to come in early to prepare his cart and supplies before his shift.  (Docket Entry No. 14, Ex. A, Deposition of Jimmy Prince at 98:5–12).  Prince asserts that "the amount of and emergency nature of the[] repair requests" made it "necessary to arrive early to prepare his cart prior to the beginning of his shift."  (Docket Entry No. 15, at 6).

Prince did not complain about not being paid overtime for this preshift work while he was worked at the Woodlands.  Prince stated in his affidavit that he did not complain because he was not aware that his preshift work was compensable overtime.  (Docket Entry No. 15, Ex. B, Affidavit of Jimmy Prince at ¶ 17).  Prince asserts that although he did not complain about it, his supervisors were well aware that he was working before his scheduled shift to prepare and stock his golf cart with materials and supplies and to service the cart.  The supervisors' offices were in the same gated maintenance complex where Prince's golf cart

4

was parked and in the same building where the supply room was located.  Sometimes the supply room was locked when Prince came in and he had to ask a supervisor to unlock the room.  There was only one gate for entering and exiting the complex, and supervisors often came and went during the preshift period and greeted Prince while he was preparing his golf cart and obtaining supplies.  (*Id.* at ¶ 7).

Prince also alleges that he worked without compensation during his daily thirty-minute meal break.  Prince did not have a scheduled time for this break.  He went to the cafeteria to eat when he thought he would have time during his shift.  In his deposition, Prince testified that he "constantly" had to answer maintenance calls on his two-way radio during his lunch break.  He would log the less-urgent requests and do those after his meal break, but he had to respond immediately to requests to work on hotel guest rooms.  Prince was often told by his supervisors, "You need to run and resolve this [maintenance issue] immediately regardless of whether you are on lunch [break] or not."  (Docket Entry No. 14, Ex. A, Deposition of Jimmy Prince at 71:19–21).  Prince testified that "oftentimes, [he] would go through the line, get [his] lunch, sit down at the table, receive a call . . . rush off, take care of that real fast and come back and finish [his] lunch."  (*Id.* at 70:13–17).  Prince testified that he did not clock in and out when he responded to these maintenance calls because he "wanted to finish [his] lunch" and "generally" "didn't expect to be gone more than a couple of minutes."  (*Id.* at 71:3–9).  Prince testified that he was called for maintenance issues during his meal break "on an almost . . . daily basis."  (*Id.* at 103:10–14).  In his affidavit, Prince stated that "whether [he] was actually out making an emergency

repair, or logging calls, [he] worked through lunch almost every day." (Docket Entry No. 15, Ex. B, Affidavit of Jimmy Prince at ¶ 9). He stated that "more often than not, [he] was forced to work through the entire meal break." (*Id.* at ¶ 10). Whether he clocked in or out when going on maintenance calls during the thirty-minute lunch break did not "seem to make a difference to [him]" because he was "working through [his] lunch break just the same." (*Id.* at ¶ 9). Prince testified that he complained on several occasions about having to work during his lunch break without pay. When he complained to Kathy Bower, an executive secretary and supervisor, she told him "that it was [his] job to have that radio nearby [him] at all times." (Docket Entry No. 14, Ex. A, Deposition of Jimmy Prince at 112:15–19). Prince also complained to his shift supervisor, Jose Canales, and the maintenance manager, Larry Miller. Canales told Prince that he did not have authority to address this issue and Miller instructed Prince to avoid "rocking the boat." (Docket Entry No. 15, Ex. B, Affidavit of Jimmy Prince at ¶¶ 14–15). Prince asserts that besides his complaining, his supervisors knew that he was working during lunch because he generally alerted them when he was about to take his break, and they had the same two-way radio he did and could hear when he was called away to do maintenance work during the break. (*Id.* ¶¶ 3, 19).

Under MND Hospitality's policy, employees were required to "record [their] working time accurately each day and sign [their] time record on [the] last workday of the pay period." (Docket Entry No. 14, Ex. C). Time records were finalized "after each associate signs an agreement that they have worked the hours as we show." (*Id.*). The employee handbook advised employees that "[b]y signing your time record on the last workday of your

6

pay period, you are attesting that the time indicated on the record is accurate.  If there is any discrepancy between the amount on your paycheck and what you believe to be your due pay, you should immediately bring this to the attention of your manager or the Payroll Department." (*Id.*).  MND Hospitality provided "Payroll Adjustment Forms" for employees to use if they noticed an error in their time records.  These forms were kept next to the time clocks where employees clocked in and out.  Prince testified that he would use one of these forms when "the time clock was not working or . . . if [his] punch was not made on the time clock."  (Docket Entry No. 14, Ex. A, Deposition of Jimmy Prince at 74:2–8).  In his affidavit, Prince stated that employees were instructed to fill out a Payroll Adjustment Form when, "[f]or example, if there had been a power outage, and the time clock reset," or if the time clock did not recognize the bar code on an employee's time card because it was worn out.  (Docket Entry No. 15, Ex. B, Affidavit of Jimmy Prince at ¶ 20).

MND Hospitality terminated Prince's employment on July 7, 2008.  Prince filed this FLSA suit on August 27, 2008.  He does not challenge the job termination.  The motion for summary judgment followed discovery.

## II.    The Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56©.  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf*, *Inc. v. Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

7

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56© burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

III.    Analysis

A.    Was M.S. Hospitality Prince's Employer?

The FLSA requires "employers" to follow certain practices in paying "employees." 29 U.S.C. § 207.  Under the FLSA, "the term 'employee' means any individual employed by an employer."  *Id.* at § 203(e)(1).  "Employer" is defined as follows:

> (d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

*Id.* at § 207(d).  The term "employer" in the FLSA is broadly interpreted.  It may include one or more joint employers, depending on the nature of their relationship.  *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973); 29 C.F.R. 791.2(a).

An employee alleging a violation of FLSA's overtime requirement has the burden of proving "that there exists an employer-employee relationship" as part of his *prima facie* case. Proof must be by a preponderance of the evidence.  *Cash v. Conn Appliances*, *Inc.*, 2 F.Supp.2d 884, 892 (E.D. Tex. 1997).  Whether a party is an "employer" is a question of law. *Reich v. Circle C Investments*, *Inc.*, 998 F.2d 324, 329 (5th Cir. 1993).  In considering whether a defendant is an "employer" or a "joint employer," a court considers the "economic realities" of the relationship, including whether the alleged employer had the power to hire and fire employees, supervised and controlled employee work schedules or conditions of employment, determined the rate and method of payment, and maintained employment

9

records. *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir.1990); *see also Yaklin v. W-H Energy Services, Inc.*, 2008 WL 4692419 (S.D. Tex. Oct. 22, 2008) ("Liability for violating an employee's rights under FLSA has attached to a parent corporation for the acts of a subsidiary when the parent substantially controls the terms and conditions of employment at its subsidiary on a regular basis.") (quotation omitted); *Tullous v. Tex. Aquaculture Processing Co. LLC*, C.A. No. H-06-1858, 2008 WL 4426140 (S.D. Tex. Sept. 30, 2008) (using the "economic realities" test to determine whether separate entities are "joint employers" under the FLSA).

In the present case, there is no evidence in the record that M.S. Hospitality was Prince's employer. The record shows that Prince was paid by MND Hospitality. All his paychecks listed MND Hospitality as his employer. (Docket Entry 14, Ex. A, Deposition of Jimmy Prince at 40:20–41:4). Prince testified that he understood that his employer was MND Hospitality. (*Id.* at 39:19–23). The record shows that MND Hospitality and M.S. Hospitality are separate corporate entities in a parent-subsidiary relationship. There is a "strong presumption" that a parent corporation is not the employer of its subsidiary's employees. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997). Prince neither alleged facts nor submitted evidence that could support an inference that M.S. Hospitality is an employer or a joint employer under the FLSA. The motion for summary judgment on the basis that M.S. Hospitality was not Prince's employer is granted.

### B.    Did MND Hospitality Violate the FLSA?

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "Employ" is defined in the Act as including "to suffer or permit to work." 29 U.S.C. § 203(g). "The broad meaning that has emerged from Supreme Court cases describes work as exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed outside the scheduled work time, an integral and indispensable part of the employee's principal activities." *Chao v. Gotham Registry*, *Inc.*, 514 F.3d 280, 285 (2d Cir. 2008) (citations omitted). "[A]n employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work." *Id.*

An employee bringing an FLSA claim for unpaid overtime compensation "must first demonstrate that she has performed work for which she alleges she was not compensated." *Harvill v. Westward Communications*, *L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005); *see also Reeves v. International Tel. and Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980) (FLSA plaintiff must show "with definite and certain evidence, that he performed work for which he was not properly compensated."). "An employee has met her requisite burden of proof 'if [she] proves that [she] has in fact performed work for which [she] was improperly compensated and if [she] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden shifts to the employer to come

11

forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee even though the result may only be approximate.'"  *Id.* (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)).  "Evidence of hours worked need not be perfectly accurate as long as it provides a sufficient basis to calculate the number of hours worked by each employee." *Colindres v. QuietFlex Mfg.*, 427 F.Supp.2d 737, 752–53 (S.D.Tex. 2006) (internal quotations omitted) (citing *Marshall v. Mammas Fried Chicken*, *Inc.*, 590 F.2d 598, 598 (5th Cir. 1979)).

MND Hospitality argues that Prince has not satisfied his burden to show by "definite and certain evidence" the amount of unpaid overtime hours he worked.  This argument is unpersuasive.  A plaintiff need not "prove each hour of overtime work with unerring accuracy or certainty." *Pforr v. Food Lion*, *Inc.*, 851 F.2d 106, 108 (4th Cir. 1988).  "In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II*, *Inc.*, No. 08 Civ. 6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (the plaintiffs' initial burden was satisfied by affidavits based on the plaintiffs' recollections describing the time spent performing various tasks that did not receive overtime compensation).

The cases cited by MND Hospitality are inapposite.  The courts in those cases held that a plaintiff's unsupported statement that he worked a certain number of hours, standing alone, was insufficient evidence of unpaid overtime. *See Harvill*, 433 F.3d at 441 (plaintiff's

12

assertion that she worked 210 hours of unpaid overtime was insufficient); *Rose v. Digital Convergence.Com, Inc.*, 2001 WL 327842, at *2 (N.D. Tex. Mar. 30, 2001) ("it is clear that a mere averment of hours worked does not constitute "definite and certain evidence" of actual hours worked").  In this case, however, Prince did not merely assert that he worked a certain number of hours.  Instead, Prince has submitted evidence as to when and how many overtime hours he worked.  He testified in his deposition that he generally prepared his cart and supplies for about thirty minutes each day before his shift began, five days a week.  He testified that he often worked through his lunch period, which was supposed to be thirty minutes a day.  Prince submitted an affidavit stating the amount of backpay to which he believes he is entitled based on the routine of performing certain work before his shift began and regularly having to do urgent repair tasks during his lunch break.  The record discloses sufficient evidence of unpaid overtime hours to satisfy Prince's initial burden.

MND Hospitality also argues that it is not liable under the FLSA because it was not aware that Prince was working unpaid overtime.  An employee is "employed,"for purposes of the FLSA, during alleged overtime hours if an employer has actual or constructive knowledge that the employee was working.  *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (citing *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)).  "'An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.'"  *Id.* (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)).  "The

13

employer who wishes no such work to be done has a duty to see it is not performed.  He [or she] cannot accept the benefits without including the extra hours in the employee's weekly total for purposes of overtime compensation.  If the employer has the power and desire to prevent such work, he [or she] must make every effort to do so." *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir.1997) (quoting *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975)); *accord Chao*, 514 F.3d at 288 ("An employer who has knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance."); 29 C.F.R. § 785.13 ("In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them.").  An employer may not escape liability for uncompensated overtime work of which the employer has actual or constructive knowledge merely by prohibiting overtime labor because an employer's "mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." *Reich v. Dept. of Conservation & Natural Res.*, *St. of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994). Because "an employer's knowledge is measured in accordance with his duty to inquire into the conditions prevailing in his business," the "cases must be rare where prohibited work can be done and knowledge or the consequences of knowledge avoided." *Id.* (internal citations, quotations and punctuation omitted).

An employee cannot perform overtime work without the employer's knowledge or contrary to its instructions and then assert a right to be paid.  If "the employee fails to notify

the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *Harvill*, 433 F.3d at 441 (citing *Newton*, 47 F.3d at 748).  An employee, however, "would not be estopped from claiming additional overtime if '[t]he court found that the employer knew or had reason to believe that the reported information was inaccurate.'" *Newton*, 47 F.3d at 749 (quoting *Brumbelow v. Quality Mills*, *Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972)).

MND Hospitality asserts that there is no evidence that it had actual or constructive knowledge that Prince was working more than the hours he reported.  MND Hospitality contends that Prince never complained about unpaid overtime.   According to MND Hospitality, the fact that Prince's supervisors may have seen him working before his shift began or during his lunch break does not mean that the supervisors knew Prince was working overtime or off the clock.  MND Hospitality asserts that Prince followed company policy to certify that the hours worked on his time record were true and correct and that it had no reason to believe that Prince was working more than what his time records reflected.  MND Hospitality also argues that Prince failed to provide information about his overtime work by filling out a Payroll Adjustment Form, which he could have easily done at any time.  MND Hospitality argues that, as a matter of law, Prince was not "employed" during his preshift and meal periods because MND Hospitality did not have notice that he was working during these times.

Prince responds that the record raises fact issues as to whether the time records are reliable and whether his supervisors had actual or constructive knowledge that he was regularly working overtime before his shift and during his lunch break.  Prince asserts that his employer required him to "clock in within pre-determined hours, regardless of whether such times correlated with the actual commencement of work."  (Docket Entry No. 15, at 16). Prince contends that the time records are unreliable because he was encouraged or required to record time only within his scheduled shift of 3:00 p.m. to 11:30 p.m.  He also contends that the time records are unreliable because he was instructed to keep his radio on and respond to maintenance calls, whether they occurred during his meal break or not.  Prince argues that his supervisors had actual, or at least constructive, notice that he was regularly working uncompensated overtime.  He points out that his supervisors routinely saw him working on his golf cart and stocking it with supplies before his scheduled shift.  He points to the evidence in the record that he would regularly greet supervisors before the shift began while he was doing this work and that sometimes he had to ask a supervisor to open the supply room for him.  Prince testified in his deposition that he had "regular" discussions with Canales, his shift supervisor, about his "pre-shift and lunch work."  (Docket Entry No. 15, Ex. A, Deposition of Jimmy Prince at 100:18–24).  In his affidavit and deposition, Prince testified that he complained to several of his superiors about having to work through his lunch breaks.  The supervisors included Canales, Bower, and Miller.  In response to his complaints, Bower said that it was Prince's job to keep his radio on and respond to the calls; Canales said that he could not do anything about Prince having to work during lunch; and

16

Miller told him to avoid "rocking the boat." Prince contends that the evidence shows that his supervisors were aware of his overtime work.

Courts have granted summary judgment in FLSA cases when the record contained only scant or vague evidence about whether and when the employee complained of working unpaid overtime during his employment. *See Harvill*, 433 F.3d at 441 (employee "presented no evidence that [defendant] was aware that she worked overtime hours without compensation"); *Newton*, 47 F.3d at 749 (employer could not have constructive knowledge of overtime when the employee never complained about or reported working overtime hours); *Uhler v. Galesi Management Corp.*, 1999 WL 20949, at *6 (N.D. Tex. Jan. 8, 1999) (granting summary judgment in favor of the employer when the employee never complained while working for the employer and only vaguely referred to an unidentified supervisor who told him not to report working overtime hours). In *Darrikhuma v. Southland Corp.*, 975 F.Supp. 778 (D. Md. 1997), the plaintiff alleged that he worked off-the-clock hours on weekends and that his employer knew about it because one of his supervisors regularly saw him working on the weekends. The court held that this was insufficient evidence of actual or constructive knowledge because the supervisor testified that she thought the plaintiff was a salaried employee. *Id.* at 783. The court held that the plaintiff's assertions that other employees knew he was working overtime were insufficient to raise a fact issue as to the employer's knowledge because the assertions were "unsupported and vague as to whether any of those persons knew that Plaintiff worked off-the-clock hours." *Id.* at 783 n.10. Similarly, in *Gaylord v. Miami-Dade County*, 78 F.Supp.2d 1320 (S.D. Fla. 1999), the court

17

held that the evidence was insufficient to support an inference that the employer knew about the overtime work.  In that case, most of the claimed overtime work took place at the employee's home, where his supervisors had no way to determine how the employee spent his time, and the employee's records did not include claimed overtime hours.  *Id.* at 1327; *see also Bailey v. County of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996) (isolated incidents of the employer being told that some employees were not recording all their hours were not sufficient to put the employer on notice that the employees regularly worked unreported overtime hours).

An employer's access to time sheets, standing alone, does not provide constructive knowledge that the plaintiff was working overtime hours.  *Newton v. City of Henderson*, 47 F.3d 736, 749 (5th Cir. 1995).  In *Newton*, the plaintiff, a City of Henderson police officer assigned to work with the East Texas DEA, contended that the City knew that the plaintiff was working overtime for the DEA.  There was no dispute that the City required employees to obtain preapproval of overtime hours and that the plaintiff had neither sought such approval nor recorded any overtime hours worked on his time sheet.  The defendant's supervisors at the City police department testified that they were aware that the plaintiff's job required work outside regularly scheduled hours, but they believed that the plaintiff was using "flex time" and following the written policy, which would not exceed the authorized number of hours in a given pay period. The plaintiff gave oral reports of his work to his supervisors but did not state the number of hours worked. The plaintiff gave written reports to the DEA that stated the number of hours worked, but his City supervisors were not

required to read these reports and there was no evidence that they, or any person responsible for processing the plaintiff's time sheets, had read them. *Id.* at 748. The Fifth Circuit rejected the plaintiff's "constructive notice" theory and reversed the judgment in his favor. The appellate court concluded that there was no basis to conclude that the City knew or should have known that it was violating the FLSA by paying the plaintiff only for the hours he claimed on his time sheets. *Id.* at 750.

By contrast, courts have denied employers' summary judgment motions when the evidence of knowledge that the employee is working overtime hours is based on more than the supervisors' positions or access to time sheets. Courts have found fact issues precluding summary judgment when the evidence showed that a plaintiff complained to her supervisors about unpaid overtime and when the supervisors encouraged or required the plaintiff to underreport hours on her time sheets. In *Boudreaux v. Banctec*, *Inc.*, 366 F.Supp.2d 425 (E.D. La. 2005), the plaintiffs were computer repair technicians who worked out of their home offices but went out on service calls assigned by their employer. Before going out on service calls, technicians were required to perform administrative duties, including reviewing emails and assignments, organizing the assignments into an efficient route, and calling computer owners to make appointments. The technicians also had to track parts and pick them up from courier services, update service calls based on part availability, and match parts with the proper service call. After the last service call of the day, the technicians had to close out and update service calls in the database, box parts, fill out paperwork, and respond to after-hours service calls from customers. The technician-plaintiffs in *Boudreaux* alleged that

they were not compensated for any of these administrative duties, which they were required to do before and after their scheduled shifts.  The employer argued that it did not have knowledge that one of the plaintiffs was performing uncompensated overtime work because he never complained about it and never reported the hours on his time card.  The court rejected this argument, noting that other technicians had complained about not being paid for administrative duties and that the supervisor had responded that these duties were not compensable because they were "just part of the job."  The court held that this evidence raised a fact issue as to whether the employer knew the plaintiffs were working overtime without being paid.  *Id.* at 438.  Similarly, in *Edmiston v. Skinny's*, *Inc.*, 2003 WL 22228737 (N.D. Tex. Sept. 15, 2003), the plaintiff was a store manager who was required to be on call and take care of problems at the store outside her regularly scheduled shift or when she had to "cover" for employees who missed their shifts.  The plaintiff testified that her supervisor told her to "watch" her hours and to not go over her allotted amount.  The court held that this evidence raised a fact issue as to whether the supervisor knew that the plaintiff was regularly working "off the clock."  *Id.* at *5.  And in *Cates v. Meldisco K-M 3730 Beltline Road*, *Texas*, *Inc.*, 1997 WL 118418 (N.D. Tex. 1997), the plaintiff, a manager who claimed that he regularly underreported his hours to remain within budget for the payroll, was met with the employer's argument that his failure to report the overtime hours on his time sheets barred his FLSA claim.  *Id.* at *1, 2.  The plaintiff submitted an affidavit stating that he told his superiors that he was working "off the clock" to fulfill his duties and that he was encouraged or forced to underreport his hours on his time sheets.  The court denied the

employer's motion for summary judgment, holding that the plaintiff's affidavit raised a fact issue as to whether the payroll forms were reliable and whether his employer knew he was working unpaid overtime. *Id.* at *4; *see also Lyle v. Food Lion*, *Inc.*, 954 F.2d 984, 987–88 (4th Cir. 1992) (upholding the trial court's verdict that relied on the plaintiffs' testimony that they regularly worked "off the clock" hours with the knowledge of store officials, despite the officials' denial of any knowledge); *Cunningham v. Gibson Elec. Co.*, *Inc.*, 43 F.Supp.2d 965, 976 (N.D. Ill. 1999) (finding that the employer had knowledge of unpaid overtime based on evidence that the supervisor instructed the plaintiff-employee not to report overtime hours worked).

Courts have also denied summary judgment when the employee's approved duties routinely required extra hours, outside the scheduled shifts.  In *Karr v. City of Beaumont*, *Texas*, 950 F.Supp. 1317 (E.D. Tex. 1997), the plaintiffs were police officers assigned to the canine unit.  They sued for unpaid overtime compensation because they were required to care for the dogs at their homes, transport the dogs, and maintain the vehicles they used for that purpose.  Police department policy required canine-division officers to care for the dogs, kennel the dogs at the officer's home, and maintain the city-provided vehicles used for transporting the dogs.  The officers performed this work after their scheduled shifts were over.  Although they did not submit these hours on their time sheets and claim overtime, the court held that the City "knew and had reason to believe that the work was being performed" because the plaintiffs were routinely working before and after their shifts and the work was "approved" and "required" by the police department.  *Id.* at 1323.

In *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825 (5th Cir. 1973), the Fifth Circuit affirmed a judgment in favor of the plaintiff-employees in a case in which the defendant had argued that it lacked knowledge of the unpaid overtime work.  Despite efforts by upper-level management to ensure accurate overtime reporting, the plaintiffs' immediate supervisors insisted that the work be completed within certain time limits.  *Id.* at 827.  The court held that because of these instructions, employees could not report all the hours they actually worked.  *Id.*  The court held that at least the immediate supervisors had constructive knowledge of unpaid overtime because they had the opportunity to get truthful overtime reports by exercising reasonable diligence.  *Id.* at 828.

In the present case, the record evidence permits an inference that MND Hospitality had actual or constructive knowledge that Prince worked overtime hours for which he was not compensated.  Prince testified that he routinely prepared his cart and stocked it with supplies before he began his shift, and that supervisors regularly saw him do this work.  Prince's job duties required him to start responding to maintenance calls right after the daily department meeting that began each shift.  Although the record does not show that anyone explicitly instructed Prince to prepare his golf cart and supplies before his scheduled shift, the record raises disputed fact issues material to determining whether the nature of his job duties, combined with the inability to clock in earlier than seven minutes before the shift was scheduled to start, resulted in limits on the amount of time he could report regardless of the amount of time it took to perform his job.  The evidence also shows that various supervisors were routinely in the maintenance area and saw Prince doing this work before his shifts

22

began.  Prince testified that these supervisors would open the supply room for him and would greet him as he worked on his golf cart and loaded it with supplies.  MND Hospitality argues that these supervisors cannot be credited with knowledge that Prince was actually working unpaid overtime.  But the record raises fact issues as to whether, by requiring Prince promptly to respond to maintenance calls immediately after he began his shift, his supervisors knew or should have known through the exercise of reasonable diligence that he was working before the shift started and that he could not clock in to record that work time.  The record also showed that Prince's regular supervisor, Jose Canales, worked the same shift as Prince.  In his deposition, Prince testified that he had "regular" discussions with Canales about the work he had to do before the shift began.  The record raises fact issues as to whether Canales or other supervisors had notice of Prince's alleged unpaid overtime work done before he could clock in for his 3:00 p.m. shift at 2:53 p.m.

The record also raises a fact issue as to whether MND Hospitality had actual or constructive knowledge that Prince was working off the clock during his meal break.  Prince testified in his deposition that he complained to several supervisors about not being able to eat his meal uninterrupted during his thirty-minute allotted break.  When Prince complained to Bower about having to work during the meal break, Bower responded that it was Prince's job to keep his radio on and to respond to maintenance calls, whether it was his break time or not.  The evidence raises fact issues material to determining whether MND Hospitality had actual or constructive knowledge that Prince was working uncompensated overtime before his shift and during his meal break.

23

MND Hospitality also argues that, even assuming it had knowledge, the unpaid overtime hours Prince has claimed are offset by holiday pay that he received.  Based on the current record, this court cannot determine, as a matter of law, the amount of unpaid overtime compensation Prince is owed if the FLSA was violated or whether the $1,112.24 in holiday pay he received offsets that amount.  MND Hospitality's argument based on holiday pay does not provide a basis for granting summary judgment.

MND Hospitality also raises a *de minimis* argument.  MND Hospitality contends that "disputes of only a few seconds or minutes of work beyond the scheduled working hours" are *de minimis* and do not give rise to an FLSA violation.  Under the FLSA, employees are not entitled to compensation for theoretically compensable work when the time sought is negligible.  *See Anderson*, 328 U.S. at 692; *Pressley v. Sanderson Farms, Inc.*, No. Civ. A. H-00-420, 2001 WL 850017, at *3 (S.D.Tex. Apr. 23, 2001), *aff'd*, 33 Fed.Appx. 705 (5th Cir. 2002).  The *de minimis* doctrine permits an employer to "disregard 'insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes.'" *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1414 (5th Cir. 1990).  Courts consider four factors in determining whether allegedly unpaid work time is *de minimis* as a matter of law: "(1) the amount of daily time spent on the additional work; (2) the administrative difficulty in recording the time; (3) the size of the aggregate claim; and (4) the regularity of the work." *Anderson v. Pilgrim's Pride Corp.*, 147 F.Supp.2d 556, 564 (E.D. Tex. 2001) (citation omitted).  Courts have found periods of approximately ten minutes or less to be *de minimis*

24

as a matter of law.  *See*, *e.g.*, *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) (7-8 minutes); *Pilgrim's Pride Corp.*, 147 F.Supp.2d at 564 (1-2 minutes); *Pressley*, 2001 WL 850017, at *3 (10 minutes).

In the present case, Prince testified that he spent approximately thirty minutes each day doing preshift preparation work.  He also testified that he was responsible for logging maintenance calls and doing maintenance work during his thirty-minute meal break and that he had to interrupt his break for such work almost daily.  The record is insufficient to determine the number of minutes Prince worked during his meal break, even on an approximate basis.  The record does not show that Prince's meal-period overtime work was *de minimis* as a matter of law.  The first factor weighs in favor of finding that none of Prince's claims are *de minimis*.  *See  Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 719 (2d Cir. 2001) (finding that daily periods of fifteen minutes were improperly excluded as *de minimis*); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 (10th Cir. 1994) (observing that as little as ten minutes of working time goes beyond the level of *de minimis*).  The aggregate size of the claim and the regularity of the work also weigh in favor of denying summary judgment on the basis that the time at issue is *de minimis*.  Prince asserts that he did unpaid overtime work before his shift and during his lunch break nearly every day during the entire time he was employed by MND Hospitality.  Because "[a]n employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him," this court cannot conclude that Prince's claims for preshift

and meal break work are *de minimis* as a matter of law.  *See* 29 C.F.R. § 785.47.

MND Hospitality's motion for summary judgment is denied.

## C.      The Motion to Strike

The defendants have moved to strike paragraphs 9, 10, 11, 16, and 22 of Prince's affidavit.  The defendants assert that paragraphs 9, 10, and 11 are incompetent summary judgment evidence because they are inconsistent with Prince's earlier deposition testimony.  The defendants argue that Prince's affidavit statement, that "more often than not" he was "forced to work through the entire meal break," contradicts his deposition testimony that "oftentimes" he would "rush off, take care of that real fast, and come back and finish [his] lunch," as well as his testimony that he did not clock in and out during his meal period because he generally "didn't expect to be gone more than a couple of minutes."  The defendants also argue that Prince's affidavit statement about complaining to several supervisors, including Mike Reginio, about working through lunch contradicts his deposition testimony that he did not complain to Reginio.  Finally, the defendants argue that paragraph 16 is inadmissible because it is irrelevant under Rule 402 of the Federal Rules of Evidence and that paragraph 22 is inadmissible because it is conclusory.

A nonmovant cannot "defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors*, *Inc. v. Infax*, *Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (citing *Thurman v. Sears*, *Roebuck & Co.*, 952 F.2d 128, 137 n. 23 (5th Cir. 1992)).  When a party's affidavit contradicts deposition testimony, "such a contradictory sworn statement should not be considered when no explanation is offered for

the inconsistency." *BLS Joint Venture v. Bank Home Savings Ass'n*, 985 F.2d 556, at *4 (5th Cir. 1993) (citation omitted). Courts are careful to distinguish between "discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169-70 (7th Cir. 1995).

This court did not rely on any of the challenged affidavit paragraphs as a basis for finding disputed issues of fact and denying the summary judgment motion. None of the challenged statements deals with Prince's preshift work. Moreover, a careful review of the asserted discrepancies between Prince's deposition testimony and his affidavit testimony about the meal-break work does not provide a basis to disregard or strike the affidavit. Prince testified in his deposition that, in general, he did not expect to be gone more than a couple of minutes when he answered an urgent maintenance call during his meal break. But Prince also testified that he was required to answer his radio and log nonemergency maintenance calls during his meal break. Prince's affidavit statement that "more often than not" he was forced to work through his entire meal break was based on not only the maintenance calls he left the cafeteria to perform but also on the time he spent answering his radio and logging maintenance calls during his break. The asserted discrepancies go to the weight, not admissibility of the affidavit statements. The motion to strike is denied.

## IV.    Conclusion

M.S. Hospitality's motion for summary judgment on the basis that it was not Prince's

employer under the FLSA is granted.  MND Hospitality's motion for summary judgment is denied.  The motion to strike is denied.

SIGNED on July 20, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge